Next case is Paul W. Hyatt v. Department of Veterans Affairs, 2008-7163. Ms. Wischow. May it please the Court, I'm Sandra Wischow, counsel for Mrs. Julianne Hyatt in the case of Paul W. Hyatt. This case involves the question of whether or not Mrs. Hyatt can be substituted for Mr. Hyatt and whether or not non-proton relief should be granted. And essentially it boils down to two real questions. Could the Department of Veterans Affairs consider this evidence that the Veterans Court had previously determined should have been obtained by the DVA and should already have been in the record? So now if Mrs. Hyatt goes back, can VA consider this evidence? But there's no dispute that the language is requiring that it be the record existed or was in the file at the date of death, right? Well, so then the question comes down to what do we mean by in the file at the date of death? All right, now the statute itself says based on evidence in the file. That's 5121. The regulation says evidence in VA's possession on or before the date of death. Was it in the VA's possession at that point? Well, we would argue that it was in their constructive possession. It was not physically there. It was not even under their control, though, was it? It wasn't because it was under the control of the Department of Defense or whomever keeps the court martial records. However, these were Service Department records. These were records that the court had already said should have been obtained long since and records that were already in existence. We are not arguing that in an accrued benefits claim the widow should be able to go out and get a new medical opinion or more buddy statements or any kind of new evidence. What we're saying, though, is when this is evidence that is in the government control, Service Department records, that the veteran had requested be obtained. There was a hearing in February 2003. Doesn't the claim die with the veteran's death except for benefits that are in the file and due and unpaid? Well, the question is what do we mean by in the file? And the file has to mean the file of this claim for benefits by this veteran. Well, perhaps it means that. However, if you look at the MEM 21 provision, now that is not substantive law. That's just guidelines on how VA interprets it. When they're talking about accrued benefits, and this is in the supplemental appendix to the Secretary's brief at 45, they say their ratings cannot be made for accrued benefits until all evidence, they say, invades VA's possession. But then they go on to say the following evidence must be in the claims folder even if the reports are not reduced to writing. Claims folder. Well, that means in the file. That's what in the file means. Right. And then we look at these four specific categories afterwards. And to take the most blatant one, reports of autopsy made on the date of death. Now, there's no way that an autopsy report is already going to be in the claims file on the day when the veteran dies. Even if this autopsy is performed by VA, the odds are pretty good it's not going to be written yet. And if you'll notice, it says the following evidence even if not reduced to writing. If it's not reduced to writing, it can't be in the file. You can't have something that's still existing in someone's mind. That's why what we suggest. But what is the legal theory one would use to get to that information? We've got a statute that one could argue is reasonably unambiguous. You've got regulations that only allow for the VA possession. And then you're down to a third tier of a manual. So we're supposed to use a few examples that the Veterans Administration put in its manual to override or supersede the regulation and more importantly the language of the statute. I'm not sure how we get to where you want us to go based on what you've just read. What we're saying is that it can be considered to be constructively in the possession of VA. The Veterans Court has recognized this constructive possession idea in Bill. We don't even know if the record exists, right? That's correct. Or if the party in possession of it will give it up. Well, this is a court-martial record. We're talking about constructive possession and you've got a couple of hurdles to get there. Well, keep in mind we're not trying to get some kind of private medical records or something of that nature. This is a government record. It's part of service department records. Is it a public record? Court-martial records, I believe, are public records. So it's subject to FOIA. That's correct. And is that then part of the overall informational database that could be used by the VA? The aspects, what sort of troubles me is the fact that the veteran did ask for this record to be included sometime prior to his death. Correct. It was not done and it was a finding of failure to assist. Correct. And then the record at least was sought at that point in time. But was it ever delivered somewhere so it could be included in the file? I do not believe that the record was ever sought, Your Honor. By the VA? No. But the veteran did try to find it, didn't he? Keep in mind, this case was at the court from pretty much over three years. The appeal was filed in June 2004, decision rendered in August 2007. During that time, you can't submit additional evidence, and so I am not certain whether counsel below had already begun the process of trying to do this. I was not the attorney who handled this at the court. But typically one would wait until after it's on remand to start trying to get this evidence to submit to VA. However, I don't believe VA ever made any effort. The veteran requested in February 2003 at a hearing before the Board that this evidence be obtained. By the time the Board issued its decision in April 2004, over a year later, they had not done anything about that. This is all speculative. I mean, is there any certainty as to whether or not even if the court-martial record exists and, you know, is available, that there is any information with regard to it? We're looking for information regarding his medical condition after he was stabbed by the bayonet. Correct. Nobody said with any certainty as to whether or not that information is actually contained in the court-martial file, right? That's correct. But as this Court said in the Moore decision in February, you know, you can't simply say we're not going to get records because we don't know what's in them. Now, Judge Castle, both in his dissent and in his original opinion, pointed out that by their very nature court-martial records are likely to have information about the extent and nature of the injury. That would be, I would think, an essential basis for a court-martial. But that's speculative, though. Yes, it is. But your client, obviously, I mean, he's going forward with this claim and he's trying to establish that this is related to the injury that occurred in wartime. And he didn't try to ascertain whether or not medical records with regard to his injury still existed? I do not know what the client tried to do at this point. However, until he got this Board decision, he didn't know what basis the Board was going to use to deny his claim. The veteran did get five medical opinions. There are five medical opinions of record saying that, in fact, his back condition was related to the injury in service. Now, when the Board issued its decision, they basically... He got these opinions. What did these opinions rely on to establish the nature of his injuries back when he was in the service? His description of the injury and buddy statements talking about that. And the Board said, well, those opinions are of little or no probative value because we don't have medical evidence or consistent lay evidence. And the buddy statements were written 20 years later, so it's not surprising that they would not necessarily be consistent in every detail. These court-martial records, however, are quite likely to contain evidence of exactly how bad the injury was in medical records obtained at that time. So if those records are obtained, the Board then would have the obligation to revisit the fact that it accorded little or no probative value to those positive medical opinions. But the medical opinions didn't rely on the stuff that's in the court-martial record because they didn't have... No, they didn't. But the reason that the Board said those medical records were not valid was because they relied on... At one point, they said the unsubstantiated testimony of the veteran and, secondly, because there was no medical evidence in the record. Let me ask you, the VA regulation says that in the file at the date of death means under the control of the Veterans Administration, right? Well, it says evidence in VA's possession on or before the date of death. Isn't that regulation entitled to Chevron deference? It is, and I'm not suggesting that any evidence can be brought in. What I'm suggesting is that the state evidence in VA's statement in VA's possession can be brought enough to include constructive possession. But is your theory of constructive based on the fact that the VA and the government in its entirety are one and the same? Is that your theory of constructive? No. My theory of constructive possession here is that the court has already determined... that this evidence should have been obtained by VA. This is evidence that was already in existence. We're not going out and getting new evidence. In government control, and the fact that it should have been obtained long before the veteran's death and that the court has determined that, there ought to be a constructive possession. Otherwise, where do you draw the line? Do you wait until maybe five years more when VA finally gets around to getting the evidence? Well, we operate, do we not, on the presumption that the government officials act with regularity? They do, but regularity at the VA tends to be very slow. So the question is, how long do we expect an elderly veteran to survive? Well, the court... The Congress has amended the law in 2008. That's correct. So if they had made that statute retroactive, we would not be here, would we? That's correct. But unfortunately, Mr. Hyatt died a year and several months before. But it's prospective. That's correct. Should we take anything from that indication that they made it prospective? Maybe the claims prior to should not be considered? I don't think that's something that you would necessarily assume because quite frequently statutes are not made retrospective. I think they were just looking at it in terms of what should happen going forward. But did the new statute, they didn't repeal the file language, right? It's not obvious to me what impact the changes in October of 2008 would have. Well, at that point, Mrs. Hyatt would have been substituted for Mr. Hyatt, and we, of course, then would be arguing the rest of the issue. As Judge Castle pointed out, that would give us the opportunity to further argue that this evidence could be admitted as part of the claims file. Would you like to save the remainder of your time? Yes, please. Thank you very much, Your Honor. Ms. Burke. May it please the Court. Even if the VA had the court martial records that are at issue here, there is still a critical piece of evidence that is missing from Mr. Hyatt's file at the time of his death, and that is a medical opinion demonstrating that there is a nexus between Mr. Hyatt's in-service injury and the current disability. You're not conceding that it was constructively in the file? No, absolutely not. I just think that if the Court is concerned about the question, the Court doesn't even have to get there. The records are absolutely not there. How are we supposed to make that determination at this level, given the record we have? How do we know that the Board wouldn't be in a position, given the evidence, the medical evidence that's already there, that they've discounted because there was no earlier evidence? How are we supposed to know whether that's the case or not, whether the Board would be in a position, given just the court martial records, to make a determination? Well, first of all, we know that Mr. Hyatt himself doesn't have any service medical records concerning this particular issue. So I think what the Court is assuming in its question is that the court martial records are going to say anything about the extent of Mr. Hyatt's injury after the fact. The most that the Court martial records could demonstrate is that there was an incident and potentially the nature and severity of the incident at the time. We already know that Mr. Hyatt doesn't have any service medical records on this particular incident. We know from the record that this incident doesn't even crop up in his witness testimony until the 1970s. So there couldn't possibly be any medical evidence of nexus. Well, we don't know that. We don't know whether or not the court martial record had extensive medical records in it. We don't know that until the record is obtained. The court martial record from 19—well, let's assume that the incident happened in 1959, like Mr. Hyatt said it did. The court martial record would have to first demonstrate that the incident happened, second, demonstrate the nature and severity of the incident, and third, link up the nature and severity of that incident with Mr. Hyatt's later back disability that wasn't demonstrated until the 1970s. That's virtually impossible. You're right, it's impossible, but I don't understand why you would require the third problem. If we assume the court martial record, which is not— they're prosecuting some guy for doing something. It's not unusual to expect that they might have had detailed information about the severity of what he did and the implications of what he did, but he's already got medical testimony dealing with his current condition and what it relates back to. The only medical testimony that demonstrates a nexus that supports Mr. Hyatt's argument is three doctor's statements from 2000 and 2002 that say essentially the following. We have buddy statements. We have reviewed those statements. We have reviewed Mr. Hyatt's testimony. Based upon what we understand happened in 1959, we see nexus, period. It's that conclusory, and that's the factual finding that the board made, that those nexus opinions were that conclusory. So there's absolutely no way that the court martial records could do anything to enhance those nexus opinions. You'd have to get a whole new nexus. That's a conclusion on your part. We don't know what those records contain, and we wouldn't know that until they were obtained and put in as part of the record. That's the entire aspect of it, though, because if the records are complete and they do show some extensive damages to his back at that point in time, that might be sufficient for the board to find the nexus without any additional medical testimony. Well, again, not to beat a dead horse, but I don't think that the court martial record can contain a nexus opinion. All it can contain is a discussion of the severity of the injury. VA still needs- No, it contains some prediction about somebody sues for something that happened, and medical professionals speculate what the long-term ramification of what's happened to this person would be. So it doesn't seem completely unbelievable to me that if there is medical testimony, it would have also gotten into at least predictions or some predictions as to what the victim might suffer through his life. Well, perhaps we're getting too far afield, but my initial reaction to that is that that's not a nexus opinion. A prediction of what could happen certainly isn't an opinion connecting up the injury with the current disability. I mean, they have no way of knowing- No, I appreciate that. Let me bring you back to the other field, which is the language in the file as of the date of death. It is bothering me, and I think Judge Gallarza sort of referenced this, that when the board of CABC concluded there was a failure of the duty to assist, and therefore these records should have been in his file and were not because of the government's failure to exercise its duty to assist. I'm right so far, right, in what I'm saying? Yes. So why should the veteran in this circumstance be penalized? I mean, the Court of Veterans Claims recognized that it's only because of the government's failure to do what the statute requires it to do, which is to assist the veteran, that we didn't have this court-martial record in his file five years earlier. So now he's being penalized for what the court has already concluded was the government's error in the first instance, and but for the government's error, this information would have been in the file. So I think the question is whether Mrs. Hyatt is being penalized for what is perceived as the VA's failure to assist the veteran by obtaining this particular document. And the answer is no, she's not, because there's no difference between what has gone on in this case and what happened in Pelea. All that's happened in this case is that the question of whether the VA has satisfied its duty has been litigated, and the VA has been found not to have satisfied its duty. That doesn't entitle anyone to benefits. No, but it entitles the veteran to have the government get his court-martial records and put them in here, and none of us can know or predict what effect. I mean, she's not asking for the payout here. She's asking to be able to pursue this claim. Well, I think it's absolutely right that she loses the opportunity to continue litigating the question. It's entirely the fault of the government for its failure to adhere to the statutory requirement that it assist veterans. Right, but that is exactly Pelea. And I think the overarching theme or the overarching important point is that the claim dies with the veteran, regardless of what the posture of the claim is. So even if the posture is that the veterans' court has just determined that the VA hasn't done something correctly, that is unfortunately the state of the claim at the veteran's death. So you're saying even if the court-martial records were already in the file, nobody would be able to look at them because it's on the veteran's death?  Right, and in fact, if that were the case, Mrs. Hyatt could, she wouldn't, I don't want to speak for her, but I don't even think she would be bothering to seek substitution or to have the judgment enter nunk-pro-tunk, because if the records were already in the file, she could then make use of them in her accrued benefits claim. Well, let me ask you, Ms. Burke. I asked this earlier and didn't get an answer, and I don't want to go far afield either. But am I correct that the statute for accrued benefits not only talks about evidence in the file at date of death, but also due and unpaid? And I know that the court below didn't deal with this language, maybe didn't have to, but I'm trying to understand the context of this appeal. Clearly it wasn't due and unpaid. It hadn't been adjudicated yet. So aside from the in the file at date of death hurdle, isn't there another hurdle here which obviously can't be met? Yes, absolutely, and obviously this isn't an issue that the Veterans Court discussed. Because presumably it didn't have to because the not in the file issue was settled. Right, and I think maybe this court's discussion of the way that this system is supposed to work, that this court's discussion in Haines might be helpful. The purpose of the accrued benefits statute, the reason why it's either based upon a rating or decision or based upon evidence in the file is to ensure that a widow like Mrs. Hyatt could recover benefits that have already been decided or that could be decided just based upon what's already in the file. So I think the way that we would construe the language due and unpaid is it's effectively due and unpaid if all of the evidence is there from which to make the determination. And of course there's a survivor benefit, which is an alternative to accrued benefits. If nothing is accrued, there's a survivor's benefit, right? I think what you're referring to is the disability and indemnification provision? Yes. Yes, absolutely. But if the record was incomplete because of the VA's failure to complete it, should there be some standing of the widow to be able to pursue that on a constructive basis? Well, the court in Padgett addressed that question of standing and also the case in controversy question and essentially determines that if the Veterans Court decision has a sort of continuing effect upon Mrs. Hyatt's claim, then yes, she could have standing. But of course in Padgett, the situation was completely different. The reason why it had a continuing relevance for the widow was because the Veterans Court decision essentially granted benefits. So of course she should have the benefit of using that decision in her accrued benefits claim. We don't buy your broad reading, but we do sort of agree with your analysis about the language in the statute, about how it has to be in the file at the date of death. And assume here that the Court of Veterans Claims, sort of in its order, it ordered the Veterans Administration to forthwith go and get these records, right? Yes. What if it had sort of said, and when you receive them, we'll sort of backdate them, non-crotonc, to the date of this decision? One, would you think the court would have the authority to do that? And two, if we're relying exclusively at least on the language in the date of the file at death, wouldn't we be in a different posture here? I don't think that the court would have the authority to order the VA to construe a document in the file assuming that there was a death in the interim. I mean I just, at least I'm unaware of any situation in which that's happened. And it might be helpful at this point to point out exactly what VA would have to do in order to get these documents. VA, the documents are currently held not by VA but by the National Archives. And it's come to VA's attention that the service member who was court-martialed is no longer alive. So what VA would have to do is to get the permission of his family in order to get the records released. They are not public. Even though they're public records? Well, they're not public records. While he was alive, the records were covered by the Privacy Act. Now that he is no longer alive, FOIA requires the records.  The only thing that VA can get its hands on is whether there was a transcript of the court-martial proceeding. If there was a transcript of the court-martial proceeding, the VA can actually obtain that itself without a court order or without a release from the family member. But not the entire record? But not the entire record, which definitely demonstrates that these records are not within VA's constructive possession. Do you agree that the statutory change that occurred in October 2008 would change the result in this case if it were applied retroactively? How do you understand the amendments of 2008? Well, first of all, the amendments of 2008 specifically state that they are to be applied prospectively and not retroactively. If the court's question is assuming that they could be applied retroactively. I'm just trying to understand what the amendments did or do. I think that if all of the events that transpired in this case had transpired after 2008, what Mrs. Hyatt would be able to do is ask for substitution, and I think the likelihood of her getting substitution would be at least considered. So we're not going to be facing these issues in the future with respect to cases that arise after the effective date of the amendment? That's correct, or at least not with respect to substitution. I think there's all kinds of issues to be hammered out about the interplay between the substitution rules and the rest of the statute. But with respect to whether she could be substituted, it's absolutely correct that that's not going to be an issue. Is there a legislative history associated with those amendments? Were they reacting to any of our cases, or what? I looked into that recently, Your Honor, and I was unable to find any specific articulation of why Congress felt it necessary to change the rules with respect to substitution. For these reasons, we respectfully request that the judgment of the Veterans Clerk be affirmed. Thank you, Ms. Burke. Ms. Mishra has a couple of minutes to rebuttal. In those couple of minutes, there are just a couple of things I would like to clarify. First of all, this case is not the same case as Pelea. In Pelea, the reband had been to give VCAA notice. Now, that's not going to add anything to the record, because even if the board says, well, yes, indeed, VCAA notice was inadequate, all they're required to do is send a new VCAA letter. You still can't, that doesn't add any, there's no continuing duty beyond that to go out and get more evidence or allow the widow to submit evidence, or in this case, the estate. Secondly, Pelea was very different because there wasn't a party anymore. The estate of the widow didn't have any ability to pursue this claim. A second point to make clear is that DIC dependency and indemnity accommodation is only available if the veteran died from a service-connected condition or was receiving individual employability for 10 years before his death. It doesn't apply here, he did not die from his back injury. So DIC is not available in this case. The only benefits that the widow can receive here is if she is able to be substituted and to go ahead and pursue the accrued benefits claim. But wasn't his claim for a service-connected injury? That's correct, but he didn't die from that injury. And in order to get DIC, you have to have died from the service-connected injury. So that's not, even if it's service-connected, that's not going to be available in this case. And finally, I would just again like to reiterate that nexus statements are already of record. We don't need nexus statements. What we need is for the board to accord probative value to those nexus statements. And if we assume that the board meant what it said, they said that there was no probative value because basically they weren't substantiated by any kind of medical or consistent lay evidence. And if the records are obtained and support that, you don't need to go get a new opinion. All you need to do is look at the opinions that are already there. Ms. Fleischer, we spoke about FOIA in those records. I guess Ms. Burke corrected the record on that basis. They're not subject to FOIA? Only the transcript is subject to FOIA, not the pertaining supporting records? Apparently, I was under the impression that the records were available. However, even the transcript would tell us whether or not there was medical evidence. And in fact, I would think that there would be testimony in the transcript because you're not going to court-martial somebody without knowing what they did. And part of what they did was how badly they were injured. Furthermore, it's also possible that we could get the survivors' agreement to obtain the medical records. Thank you, Ms. Fleischer.